### UNITED STATES DISTRICT COURT
### DISTRICT OF MAINE

SUZANNE C. BRALEY,                    )
                                      )
                    *Plaintiff*       )
                                      )
v.                                    )          *Docket No. 04-176-B-W*
                                      )
JO ANNE B. BARNHART,                  )
Commissioner of Social Security,      )
                                      )
                    *Defendant*       )


### REPORT AND RECOMMENDED DECISION[1]


This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question whether the commissioner supportably found the plaintiff's impairments resulting from a 2002 motor-vehicle accident non-severe. I recommend that the decision of the commissioner be affirmed.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff's statements concerning her impairments and their impact on her ability to work were not entirely credible in light of the reports of treating and examining medical practitioners and the medical history, Finding 3, Record at 18; that she

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 2, 2005 pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

did not have any impairment that significantly limited her ability to perform basic work-related functions and therefore did not have a severe impairment, Finding 4, *id*.; and that she therefore had not been under a disability at any time through the date of decision, Finding 5, *id*.[2]  The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 2 of the sequential evaluation process.  Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims.  *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986).  When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered."  *Id.* at 1124 (quoting Social Security Ruling 85-28).

The plaintiff complains that the administrative law judge (i) rendered a Step 2 decision

---

[2] Inasmuch as the plaintiff had acquired sufficient quarters of coverage to remain insured for purposes of SSD through at least December 31, 2007, *see* Finding 1, Record at 18, there was no need to undertake a separate SSD analysis.

unsupported by substantial evidence in view of his failure to accord due weight to the residual functional capacity ("RFC") assessment of treating physician Eric J. Caccamo, D.O., (ii) failed to properly consider her complaints of pain, and (iii) made a flawed credibility determination. *See generally* Plaintiff's Itemized Statement of Specific Errors ("Statement of Errors") (Docket No. 10). I find no reversible error.

## I.  Discussion

### A.  Step 2 Determination

The plaintiff, who suffered a pelvic fracture, chest-wall contusion, large avulsion and lacerations of the right leg and elbow in a September 2002 motor-vehicle accident, *see* Record at 151, complains as an initial matter that the administrative law judge erroneously determined that her impairments resulting from that accident were non-severe inasmuch as he failed either to accord the RFC opinion of Dr. Caccamo controlling weight or to undertake the type of analysis required to discount it, *see* Statement of Errors at 2-5.

The RFC assessment in question, dated November 14, 2003, is virtually illegible. *See* Record at 215-18 ("Caccamo RFC").  In her Statement of Errors, the plaintiff represented that Dr. Caccamo found her able to lift less than ten pounds, unable to walk or stand for more than two hours at a time and unable ever to climb, balance, stoop, kneel, crouch or crawl. *See* Statement of Errors at 1.  At oral argument, her counsel explained that he was able to ascertain this by comparing a legible blank copy of the form, which was sent to Dr. Caccamo for completion by the plaintiff's counsel's office, against the form actually completed by Dr. Caccamo.  Counsel for the commissioner objected, contending that the new information was unauthenticated and, in any event, irrelevant.  She noted that although the plaintiff's counsel had promised at hearing to provide the administrative law judge with a

legible copy of that document, *see id.* at 22, he never did so.  She observed that not surprisingly, the administrative law judge described the Caccamo RFC only in the most general terms.  *See id.* at 17 (describing Caccamo RFC as finding plaintiff "significantly limited by lower extremity problems").  She argued that, for purposes of this appeal, the only relevant information was that provided to the administrative law judge, *i.e.*, the illegible form.[3]

I permitted plaintiff's counsel an opportunity to supply to the court and the commissioner a copy of the blank form transmitted to Dr. Caccamo, together with authentication that this was indeed a true and accurate copy of the form he completed.  I requested that counsel for the commissioner then file with the clerk's office a letter indicating whether – aside from her objection on relevance grounds – she accepted this authentication.  Following oral argument, the plaintiff's counsel supplied to the court, with a copy to the commissioner, the letter and blank form sent to Dr. Caccamo and the completed form returned by him.  *See* Letter dated June 2, 2005 from Francis M. Jackson to Office of the Clerk ("Jackson Letter") & exhibits thereto.  He certified that these were "the original documents taken from the file maintained under [his] direction and control."  *See* Jackson Letter at 1.

Counsel for the commissioner responded that she was "willing to stipulate that the RFC assessment in the transcript (Tr. 215-18) is a true and accurate copy of that received in Mr. Jackson's office from Dr. Caccamo[.]"  *See* Letter dated June 3, 2005 from Susan Beller Donahue to Hon. Magistrate Judge David M. Cohen at 1.  Accordingly, I accept the original of the Caccamo RFC supplied to the court as part of the Record in this case.  Counsel nonetheless noted that she failed to see what this added to the existing record inasmuch as the document faxed to her was no more legible

---

[3] As counsel for the commissioner pointed out at oral argument, the Record contains another RFC assessment by Dr. Caccamo.  *See* Record at 196.  Although this RFC assessment is legible, it is undated and vague, indicating only that certain activities were affected by the plaintiff's impairments but not describing how or why they were affected.  *See id.* In any event, the Statement of Errors focuses on the virtually illegible RFC assessment, not on this one.  *See* Statement of Errors at 2-5.

than the copy already of record.  *See id*.

Counsel for the commissioner was unwilling to enter into any stipulation regarding the blank form, objecting to supplementation of the record with that document on grounds that (i) the plaintiff had failed either to provide it to the administrative law judge or the Appeals Council or to make a showing in this litigation of good cause for that default, as required by 42 U.S.C. § 405(g), and, (ii) in any event, a visual comparison of the blank form against the transcript copy yielded "questionable results at best." *See id*.  She concluded: "The fact remains that the plaintiff, a represented party, failed to meet her Step Two burden of production, and through the present has not remedied that failure.  The ALJ cannot be faulted here for failing to assign greater weight to an illegible document, and his decision denying the requested benefits should be affirmed."  *Id*. at 1-2.

These points are well-taken.  As counsel for the commissioner suggested, 42 U.S.C. § 405(g) provides "statutory authority to remand for further proceedings where new evidence is presented after the ALJ decision if the evidence is material *and* good cause is shown for the failure to present it on a timely basis."  *Mills v. Apfel*, 244 F.3d 1, 5 (1st Cir. 2001) (emphasis in original).  Clearly, no good cause has been shown for failure to present a legible copy of the blank form on a timely basis.  Hence, I exclude it from the Record.  Beyond this, I agree with counsel for the commissioner that the plaintiff, who at all relevant times was represented by counsel, defaulted in her Step Two burden of production by failing to provide either a legible copy of the Caccamo RFC or an authenticated blank copy of the RFC form to the administrative law judge despite the promise of her counsel to do so.  *See, e.g., Stringer v. Callahan*, 55 Soc. Sec. Rep. Serv. 907, 908 (N.D. Ill. 1998) ("The plaintiff has the burden of production and persuasion on steps one through four, and the burden shifts to SSA on step five to show ability to engage in some other type of SGA [substantial gainful activity].").  It follows, as counsel for the commissioner posits, that the commissioner cannot be faulted for failing to supply

5

greater weight to an illegible document.

In any event, even accepting at face value that the Caccamo RFC limited the plaintiff to standing and/or walking less than two hours in an eight-hour workday and lifting no more than ten pounds, *see* Jackson Letter at 1, the outcome would be the same in this case.[4]  The plaintiff faults the administrative law judge's treatment of Dr. Caccamo's RFC opinion on three bases: failure to (i) accord the opinion controlling weight, (ii) discuss every factor listed in relevant regulations as bearing on assessment of a treating-source opinion, and (iii) provide good reason for discounting the opinion with respect to the one factor discussed – supportability.  *See* Statement of Errors at 2-5.  For the following reasons, none of these points is persuasive:

1.    The Caccamo opinion touched on the subject of RFC – a determination reserved to the commissioner with respect to which even opinions of a treating source are accorded no "special significance."  *See* 20 C.F.R. §§ 404.1527(e)(1)-(3), 416.927(e)(1)-(3).  An opinion on an issue reserved to the commissioner never is entitled to controlling weight.  *See, e.g.*, Social Security Ruling 96-5p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-5p"), at 122.

2.    Although not entitled to controlling weight, treating-source opinions on issues reserved to the commissioner are entitled to consideration based on the six enumerated factors that the plaintiff describes, *see* Statement of Errors at 3: (i) length of the treatment relationship and frequency of examination, (ii) nature and extent of the treatment relationship, (iii) supportability – *i.e.*, adequacy of explanation for the opinion, (iv) consistency with the record as a whole, (v) whether the treating physician is offering an opinion on a medical issue related to his or her specialty, and (vi) other

---

[4] In his June 2, 2005 letter, plaintiff's counsel clarified that the representation in the Statement of Errors that the Caccamo RFC limited her to lifting *less than* ten pounds was in error; actually, it limited her to lifting ten pounds.  *See* Jackson Letter at 1.

factors highlighted by the claimant or others, 20 C.F.R. §§ 404.1527(d)(2)-(6), 416.927(d)(2)-(6); *see also, e.g.*, SSR 96-5p at 124 ("In evaluating the opinions of medical sources on issues reserved to the Commissioner, the adjudicator must apply the applicable factors in 20 CFR 404.1527(d) and 416.927(d).").

Nonetheless, the plaintiff does not cite, nor can I find, any First Circuit authority for the proposition that an administrative law judge must slavishly discuss each of these factors for his consideration of a treating-source opinion to pass muster.  Indeed, at oral argument counsel for the plaintiff conceded that there is no such obligation.  Relevant regulations require only the provision of "good reasons in our notice of determination or decision for the weight we give your treating source's opinion."  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see also, e.g.*, SSR 96-5p at 127 (even as to issues reserved to the commissioner, "the notice of the determination or decision must explain the consideration given to the treating source's opinion(s)"); Social Security Ruling 96-8p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004) ("SSR 96-8p"), at 150 (an administrative law judge can reject a treating-source opinion as to RFC but "must explain why the opinion was not adopted").

3.      In this case, the administrative law judge's explanation of his treatment of the Caccamo RFC implicated not only supportability but also consistency with the record as a whole.  *See* Record at 17.  As the administrative law judge correctly observed, *see id.*, Dr. Caccamo's own notes indicated that in January 2003 the plaintiff's knee wound had "healed nicely" although she had pain "off and on" that was addressed with Percocet on an as-needed basis, but by February and March 2003 she denied having any musculoskeletal problems and was taking no medications, *see id.* at 185-92.  As he further pointed out, there is no indication in the Record of any treatment by Dr. Caccamo or anyone else after March 2003.  *See id.* at 17.  He reasonably concluded: "Clearly, the absence of

treatment for any of the claimant's allegedly disabling impairments for more than a year prior to the hearing, as well as her denial of musculoskeletal complaints during her last two visits to Dr. Caccamo, argues against a finding that she has a severe impairment." *Id*.[5]

The plaintiff argues that Dr. Caccamo's RFC assessment should have been found supportable and consistent with the Record as a whole inasmuch as (i) Dr. Caccamo referred, in his RFC, to the plaintiff's need for "prolonged" physical therapy and (ii) his office notes, for which he used forms, cannot reasonably be construed as painting an exhaustive picture of her condition at those times. *See* Statement of Errors at 4. Neither point is well-taken. Although Dr. Caccamo did indeed refer to "prolonged" physical therapy, *see* Record at 216, I find no evidence of Record that she underwent it, nor was plaintiff's counsel at oral argument able to point to any. Inasmuch as appears, she attended physical therapy only for the period from October 29, 2002 through November 12, 2002, during which she had a total of four visits with two cancellations. *See id*. at 148. While Dr. Caccamo indicated in a January 9, 2003 note that the plaintiff was to start physical therapy on her right knee and in a January 29, 2003 note that she was to continue it, *see id*. at 190, 192, there are no separate physical-therapy notes of Record corroborating that she did so during that time. Dr. Caccamo's notes made no further reference to physical therapy. *See id*. at 185-88. Nor is it fair to say that because Dr. Caccamo's notes were made with the aid of forms, they do not paint an exhaustive picture of her condition. In fact, the converse seems to be true. With the aid of the thorough and detailed forms, Dr. Caccamo appears to have conducted a thorough review of all major body systems (including musculoskeletal) during each of the plaintiff's office visits. *See, e.g., id*. at 185-92.

---

[5] The administrative law judge misspoke in stating that more than a year had elapsed between the plaintiff's last recorded treatment and the hearing. Her last treatment record was dated March 2003, *see* Record at 185, and the hearing was held in January 2004, *see id*. at 19. However, his overall point still is well-taken: A considerable period of time elapsed during which there was no recorded treatment.

In short, inasmuch as the plaintiff failed to carry her Step 2 burden of production by submitting a legible copy of the Caccamo RFC and, in any event, to the extent the administrative law judge was able to decipher it, he followed a proper process and arrived at a supportable conclusion in discounting it, he committed no reversible error in failing to accord it greater weight.

### B.  Pain Evaluation

The plaintiff next complains that the administrative law judge failed to evaluate her subjective complaints of pain in accordance with the so-called *Avery* factors as set forth in *Avery v. Secretary of Health & Human Servs.*, 797 F.2d 19, 21 (1st Cir. 1986), and restated in 20 C.F.R. §§ 404.1529(c) & 416.929(c) and Social Security Ruling 96-7p.  *See* Statement of Errors at 5.  I discern no reversible error.

*Avery* instructs that an adjudicator "be aware that symptoms, such as pain, can result in greater severity of impairment than may be clearly demonstrated by the objective physical manifestations of a disorder."  *Avery*, 797 F.2d at 23 (citation and internal quotation marks omitted).  "Thus, before a complete evaluation of this individual's RFC can be made, a full description of the individual's prior work record, daily activities and any additional statements from the claimant, his or her treating physician or other third party relative to the alleged pain must be considered."  *Id*. (citation and internal quotation marks omitted).

Here, as in the context of the plaintiff's treating-source argument, she points to no First Circuit authority for the proposition that an administrative law judge must slavishly discuss each *Avery* factor, and I find none.

Consistent with *Avery*, the administrative law judge questioned the plaintiff extensively at hearing regarding, *inter alia*, her claimed pain and her activities of daily living.  *See* Record at 36-57.  While he did not undertake a pain analysis separate from his overall credibility and Step 2 analyses,

he did consider pain in the sense that he weighed the plaintiff's allegations that she could walk and stand for only short periods, spent much of the day sitting with her legs elevated and indicated that prolonged sitting aggravated her back, resulting in a need to lie down. *See id.* at 17.  He then went on to discount those allegations on several bases, including inconsistency with Dr. Caccamo's progress notes, failure to appear at a consultative hearing and evasiveness in her responses to questioning at hearing. *See id.*  These findings, in turn, were supported by the evidence of Record:

1.      As discussed above, Dr. Caccamo noted no musculoskeletal complaints and no use of medication during his final treatment sessions of Record in February and March 2003; thereafter, inasmuch as appears, the plaintiff sought no treatment from Dr. Caccamo or anyone else.

2.      The plaintiff posits that the administrative law judge erred in negatively assessing her credibility on the basis of her failure to appear for a consultative examination inasmuch as the plaintiff's counsel explained at hearing that the doctor, rather than the plaintiff, was the one who was unable to keep the scheduled appointment.  *See* Statement of Errors at 6; Record at 24-26. Nonetheless, given the consulting examiner's description of the incident, the administrative law judge did not err in holding the plaintiff accountable for the mixup:

> The patient was given an appointment to be seen on November 21, 2002.  On November 13th, an attempt was made to contact the patient to reschedule this appointment, however, it was not possible to contact the patient due to lack of answer at the telephone and lack of an answering machine.  An appointment card was mailed to the patient, however, there has been no response from this patient and as of this date [December 19, 2002], this patient has not presented to my office for evaluation and has not contact[ed] my office to reschedule her appointment.

*Id.* at 176.

3.      To the extent such things can be gleaned from the cold Record, the plaintiff does appear to have been evasive in answering some of the administrative law judge's questions – enough so that the administrative law judge felt compelled to call her counsel's attention to the problem during the

10

hearing.  *See, e.g., id*. at 48-52.

Pain determinations – like credibility determinations in general – are entitled to deference, especially when supported by specific findings.  *See, e.g., Frustaglia v. Secretary of Health & Human Servs.,* 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings.").  In this case, the administrative law judge's handling of the plaintiff's pain complaints meets that standard.

### C.  Credibility Analysis

The plaintiff's final point of error – that the administrative law judge rendered a flawed credibility determination – may be disposed of quickly.  The plaintiff posits that the administrative law judge failed to point to a valid basis upon which to discount her credibility, arguing that her testimony was completely consistent with Dr. Caccamo's RFC assessment and that she provided adequate explanation for her failure to appear for a consultative examination.  *See* Statement of Errors at 5-6.

As discussed above, the administrative law judge supportably found that (i) the plaintiff's testimony was inconsistent with medical evidence of record, including Dr. Caccamo's progress notes (as opposed to his RFC assessment), (ii) her failure to appear for a consultative examination cast doubt on her credibility, and (iii) she was evasive during her hearing testimony.  His credibility findings accordingly are entitled to deference.  *See, e.g., Frustaglia,* 829 F.2d at 195.

### II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### ___NOTICE___

***A party may file objections to those specified portions of a magistrate judge's report or***

11

*proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 7th day of June, 2005.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge

12